[No. 14154.   Department One. — October 20, 1891.]

## JACOB U. MARRINER, RESPONDENT, v. GILBERT L. DENNISON, APPELLANT.

VENDOR AND PURCHASER — CONTRACT FOR EXCHANGE OF LANDS — SUBSTITUTED CONTRACT — FRAUD — RESCISSION — DAMAGES. — A party who has entered into a contract for an exchange of lands, and who was subsequently induced by fraud of the other party to substitute a contract for the exchange of other lands in lieu of those first contracted for, cannot rescind the second contract, and recover for a breach of the first contract, unless he was actually damaged by the substitution of the last agreement for the first.

ID. — BURDEN OF PROOF — VERDICT CONTRARY TO INSTRUCTIONS — IMPROPER ALLOWANCE OF DAMAGES. — Where, in an action for damages brought upon the first contract, the court instructed the jury that they could not find for the plaintiff, unless he had proved by a preponderance of evidence that he was damaged by the agreement to take the lots last contracted for in lieu of those first contracted for, and the evidence does not show that he was damaged thereby in any appreciable sum, the damages allowed should at most be only nominal, and a verdict in favor of the plaintiff, for damages in the sum of two thousand five hundred dollars, is contrary to the instructions of the court, and should be set aside for that reason.

ID. — EVIDENCE — MARKET VALUE OF LOTS — SELLING PRICE. — The price at which lots are sold may be shown as tending to prove their value, but it is the market value — that is, the price at which equivalent property might be bought — that is controlling in an action for damages for breach of contract to convey the lots; and the price at which the lots in controversy were sold to the agent of a railroad company cannot control,

where it appears that the plaintiff wanted the lots for a residence, and could have purchased as good if not better lots for that purpose, in the immediate vicinity, for a much less price.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial.

The action is for damages for breach of a contract between the plaintiff and defendant for the exchange of lands, executed January 13, 1887, the body of which was in the following words: —

"VINELAND, CAL., Jan. 13, 1887.

"This agreement, made this day between G. L. Dennison of Los Angeles, and J. U. Marriner of Vineland, California, is as follows: Said Dennison agrees to convey to said Marriner lots 1, 2, 33, 35, 60, and 59, in his subdivision of the McGee tract, and for same six lots said Marriner agrees to convey to said Dennison the ten acres, with new house and improvements built by him, and lot No. 52, building lots in Malden, Massachusetts, bought of E. S. Converse. Size of lot, 6,440 square feet; viz., 57½ feet by 115 feet deep."

The amended complaint set forth a more particular description and identification, by extrinsic matter, of the lands mentioned in the contract, and alleged a full performance of all conditions on plaintiff's part, and a breach of the contract on the part of the defendant, and that plaintiff sustained damages by such breach in the sum of three thousand five hundred dollars, which was alleged to be the amount of increase in value of the defendant's lots over that of the property to be exchanged therefor. The amended complaint makes no reference to any other contract, and omits the matter alleged in the original complaint as to fraud of the defendant in procuring a substituted contract, as stated in the opinion rendered on the former appeal (78 Cal. 205, 206). The answer, besides other defenses, alleged that on the fourteenth day of March, 1887, the plaintiff and defendant mutually rescinded the said contract of January 13, 1887, and substituted therefor the following contract: —

"PASADENA, CAL., March 14, 1887.

"This agreement, made this day, is as follows: J. U. Marriner agrees to sell me his house and ten acres of land in Azusa in exchange for 200 feet on Fair Oaks Avenue, by 150 feet deep, to be taken from the seventy acres bought from Mr. Banta, about 1,250 feet from north line, and a deed to be made in ten days.

[Signed]                              "J. U. MARRINER."

The answer further alleged that the said ten acres is the same ten acres referred to in the previous contract, and further describes and identifies by extrinsic averments the land agreed to be sold, and also the land to be exchanged therefor, which was alleged to be a piece of land owned by the defendant, in the city of Pasadena, which defendant alleged that he has been ready and willing to convey, and has tendered a conveyance to plaintiff, but that plaintiff refused to accept.

Further facts are stated in the opinion rendered in this case, and in the opinion rendered upon the former appeal (78 Cal. 204–207).

*E. C. Bowers,* for Appellant.

*M. C. Hester,* and *Judson, Hester & Wood,* for Respondent.

BELCHER, C. — This is the second appeal in this case. The decision on the first appeal is reported in 78 Cal. 202. After the case was sent back for a new trial, the pleadings were amended so as to conform to that decision. The case was then tried before a jury, and the result was a verdict and judgment in favor of the plaintiff, for two thousand five hundred dollars damages. The defendant moved for a new trial, which was denied, and has appealed from the order denying his motion.

We think a new trial should have been granted.

It was held, on the former appeal, that the plaintiff could not rescind the contract of March 14, 1887, and recover for a breach of the contract of January 13, 1887, even though he was induced to make the change by

fraud, unless he was damaged by the change; and it was said: "It was necessary for the plaintiff to allege and prove that the last property contracted for was of less value than the first, or other facts sufficient to show that he was damaged by the making of the last contract."

And on the new trial the court instructed the jury that they could not find for the plaintiff, unless he had proved by a preponderance of evidence that he was damaged by the agreement to take the lots last contracted for in lieu of those first contracted for.

It is clear, we think, that the plaintiff did not prove by a preponderance of evidence, if at all, that he was damaged by the making of the last contract in the sum of two thousand five hundred dollars, or in any appreciable sum; and if this be so, the damages allowed should at most have been only nominal.

To prove the value of the six McGee lots which were to be conveyed to him under the first contract, plaintiff called as a witness one Scott, who testified that on the 9th of March, 1887, defendant executed a written agreement to sell him the Dennison subdivision of the McGee tract in Pasadena, containing ten acres, and subdivided into sixty lots; that he was to pay for the six lots in question, in the aggregate, six thousand five hundred dollars; that in making the purchase he was acting for other parties, who represented the Santa Fé Railroad Company; and that the company wanted the property for railroad purposes. He then went on to testify that he did not think the lots were worth what he agreed to give, and told the parties he was buying for, at the time, that they were wild to give any such price for the property; that it was not worth half of it; that the inside lots were really worth about $400, and the corner lots about $450.

Plaintiff also called another witness, one Evans, who testified that he was in the real estate business in Pasadena in 1887, and knew the lots, and that he considered them worth, in March, 1887, four hundred dollars to five hundred dollars per lot.

The above was all the testimony introduced by the plaintiff as to the value of the lots.

The defendant called two witnesses, Wilson and Phillips, to show the value of the McGee lots. Wilson testified that he was in the real estate business at Pasadena, and knew the lots, and that they were worth, in March, 1887, about $400 to $500 each; and Phillips testified that he owned adjoining land, and that in March, 1887, the inside lots were worth $300, and the corner lots $450.

The respondent claims that the price at which Scott agreed to take the lots is controlling as to their value; but in view of the other testimony upon the subject, we do not think this can be so. It is true that the price at which a thing is sold may be shown as tending to prove its value; but property is sometimes sold for more and sometimes for less than its market value, and it is the market value — that is, the price at which an equivalent thing might be bought — that is controlling in a case like this. (Civ. Code, sec. 3354.) The plaintiff wanted the lots to build a residence on for himself, and the evidence shows that he could have purchased as good if not better lots for that purpose, in the immediate vicinity, for much less than Scott agreed to pay.

As to the value of the lots in the Banta tract, on Fair Oaks Avenue, which the plaintiff was to take under the second contract, the decided preponderance of the evidence was, that they were, in March, 1887, worth much more than the McGee lots. The plaintiff himself testified that he sold some lots on that avenue in July, 1887, for eight hundred dollars each, and one for one thousand dollars.

Under the showing made, the verdict seems to have been clearly contrary to the instructions of the court, and should have been set aside for that reason.

We advise that the order appealed from be reversed, and the cause remanded for a new trial.

TEMPLE, C., and VANCLIEF, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the order appealed from is reversed, and the cause remanded for a new trial.

Rehearing denied.